UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Jodie Marie Nickerson,
    Claimant

v.                              Case No. 15-cv-487-SM
                                    Opinion No. 2017 DNH 003
Carolyn W. Colvin, Acting Commissioner,
Social Security Administration,
    Defendant

**O R D E R**

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), claimant, Jodie Nickerson, moves to reverse the Acting Commissioner's decision denying her applications for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. § 423, and Supplemental Security Income Benefits under Title XVI, 42 U.S.C. §§ 423, 1381-1383c (the "Act").  The Acting Commissioner objects and moves for an order affirming her decision.

For the reasons discussed below, claimant's motion is granted, and the Acting Commissioner's motion is denied.

**Factual Background**

I.   Procedural History.

In November of 2012, claimant filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging that she was disabled and had been unable to work since November of 2009.  Claimant was 34 years old at the time of her alleged onset of disability.  Her applications were denied, and claimant requested a hearing before an Administrative Law Judge ("ALJ").

In May of 2014, claimant, her attorney, and an impartial vocational expert appeared before an ALJ, who considered claimant's applications de novo.  On July 7, 2014, the ALJ issued his written decision, concluding that claimant was not disabled, as that term is defined in the Act, at any time prior to the date of his decision.  Claimant then sought review by the Appeals Council, which denied her request for review. Accordingly, the ALJ's denial of claimant's applications for benefits became the final decision of the Commissioner, subject to judicial review.  Subsequently, claimant filed a timely action in this court, asserting that the ALJ's decision is not supported by substantial evidence.

Claimant then filed a "Motion to Reverse" the decision of the Acting Commissioner (document no. 8).  In response, the Acting Commissioner filed a "Motion for an Order Affirming the Decision of the Commissioner" (document no. 11).  Those motions are pending.

II.  Stipulated Facts.

Pursuant to this court's Local Rule 9.1, the parties have submitted a joint statement of stipulated facts which, because it is part of the court's record (document no. 12), need not be recounted in this opinion.  Those facts relevant to the disposition of this matter are discussed as appropriate.

**Standard of Review**

I.  "Substantial Evidence" and Deferential Review.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  Factual findings and credibility determinations made by the Commissioner are conclusive if supported by substantial evidence.  See 42 U.S.C. §§ 405(g), 1383(c)(3).  See also Irlanda Ortiz v. Secretary of Health & Human Services, 955 F.2d 765, 769 (1st Cir. 1991).  Substantial

evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).  Importantly, it is something less than a preponderance of the evidence, so the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.  Consolo v. Federal Maritime Comm'n., 383 U.S. 607, 620 (1966).  See also Richardson v. Perales, 402 U.S. 389, 401 (1971).

II.  The Parties' Respective Burdens.

An individual seeking SSI and/or DIB benefits is disabled under the Act if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  See also 42 U.S.C. § 1382c(a)(3).  The Act places the initial burden on the claimant to establish the existence of a disabling impairment.  See Bowen v. Yuckert, 482 U.S. 137, 146-47 (1987); Santiago v. Secretary of Health & Human Services, 944 F.2d 1, 5 (1st Cir. 1991).  To satisfy that burden, the claimant must prove, by a preponderance of the evidence, that her impairment prevents her from performing her

4

former type of work. See Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985); Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982). If the claimant demonstrates an inability to perform her previous work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that she can perform, in light of her age, education, and prior work experience. See Vazquez v. Secretary of Health & Human Services, 683 F.2d 1, 2 (1st Cir. 1982). See also 20 C.F.R. §§ 404.1512(f) and 416.912(f).

In assessing a disability claim, the Commissioner considers both objective and subjective factors, including: (1) objective medical facts; (2) the claimant's subjective claims of pain and disability, as supported by the claimant's testimony and/or that of other witnesses; and (3) the claimant's educational background, age, and work experience. See, e.g., Avery v. Secretary of Health & Human Services, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v. Secretary of Health & Human Services, 690 F.2d 5, 6 (1st Cir. 1982). Ultimately, a claimant is disabled only if her:

> physical or mental impairment or impairments are of
> such severity that [she] is not only unable to do
> [her] previous work but cannot, considering [her] age,
> education, and work experience, engage in any other
> kind of substantial gainful work which exists in the
> national economy, regardless of whether such work

5

exists in the immediate area in which [she] lives, or
whether a specific job vacancy exists for [her], or
whether [she] would be hired if [she] applied for
work.

42 U.S.C. § 423(d)(2)(A).  See also 42 U.S.C. § 1382c(a)(3)(B).


With those principles in mind, the court reviews claimant's
motion to reverse and the Acting Commissioner's motion to affirm
her decision.


## Background - The ALJ's Findings

In concluding that Nickerson was not disabled within the
meaning of the Act, the ALJ employed the mandatory five-step
sequential evaluation process described in 20 C.F.R. §§ 404.1520
and 416.920.  See generally Barnhart v. Thomas, 540 U.S. 20, 24
(2003).  Accordingly, he first determined that Nickerson had not
been engaged in substantial gainful employment since her alleged
onset of disability: November 6, 2009.  Admin. Rec. at 18.
Next, he concluded that she suffers from the following severe
impairments: "status post-left knee arthroscopy, right ankle
laxity, somatoform disorder, anxiety disorder and affective
disorder."  Id. at 21.  The ALJ considered claimant's additional

impairments: high blood pressure and headaches, id. at 21, but determined that these impairments were nonsevere.[1]  Id.

The ALJ then determined that Nickerson's impairments, regardless of whether they were considered alone or in combination, did not meet or medically equal one of the impairments listed in Part 404, Subpart P, Appendix 1.  Id. at 22.  In conjunction with this determination, the ALJ evaluated Nickerson's depression, and somatoform and anxiety disorders under Section 12.06, but found that they did not meet the criteria of Section B of that Listing.

Next, the ALJ concluded that Nickerson retained the residual functional capacity ("RFC") to perform the exertional demands of light work, as defined in 20 CFR 404.1567(b) and 416.967(b): "she can lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and walk for 6 hours in the workday; sit for 8 hours in the work days; push and pull occasionally with her lower extremities; frequently balance;

---

[1]     The ALJ also ascribed impairments of bilateral hip pain and chronic low back pain to Nickerson, but, in doing so, was improperly referencing records that belonged not to Nickerson, but instead to another patient entirely.  Records relating to that patient were erroneously included in the exhibits reviewed by the ALJ.  They were subsequently removed from the administrative record by the Appeals Counsel at some point prior to this appeal, and this court has not had an opportunity to review them or assess the impact they may have had on the ALJ.

occasionally climb stairs, stoop and crouch; should never climb
ladders, kneel or crawl; should avoid unprotected heights; and
is limited to unskilled and semi-skilled work, for which she is
able to concentrate, persist and pace for the typical two hour
segments of time during a normal work day and work week."
Admin. Rec. at 23-24.

In light of those restrictions, and relying on the
testimony of the vocational expert, the ALJ concluded that
Nickerson was capable of performing her past relevant work as a
day program worker.  Id. at 27.  The ALJ then made an
alternative finding, and, under step five, considered whether
there were any jobs in the national economy that claimant might
perform.  Based on claimant's educational and vocational
background, and her RFC, the ALJ determined that claimant could
perform the jobs of fast food worker, sales attendant and
sorter.  Id. at 28.  Accordingly, the ALJ concluded that
claimant was not "disabled," as that term is defined in the Act,
through the date of his decision.

## Discussion

Nickerson challenges the ALJ's decision, arguing that the
ALJ erred by mishandling the medical opinion evidence, and

improperly evaluating her credibility.   She further takes issue
with the ALJ's step five determination.   Nickerson's argument
regarding the medical opinion evidence is persuasive, and
dispositive.   Accordingly, the court need not address her
remaining arguments.

"An ALJ must take into account the medical opinions in a
claimant's case record when making a disability determination."
Wenzel v. Astrue, No. 11-CV-269-PB, 2012 WL 2679456, at *4
(D.N.H. July 6, 2012) (citing 20 C.F.R. § 404.1527(b)).   As this
court has previously stated:

> [d]uring the process of review, when the Commissioner
> determines that "any of the evidence in [a] case
> record, including any medical opinion(s), is
> inconsistent with other evidence or is internally
> inconsistent, [she] will weigh all of the evidence and
> see whether [she] can decide whether [claimant is]
> disabled based on the evidence [she has]." [20
> C.F.R.] § 404.1527(c)(2).   When it is necessary to
> weigh medical evidence, every medical opinion will be
> evaluated, regardless of its source. [20 C.F.R.]
> § 404.1527(d).   According to the established hierarchy
> of medical sources, opinions from treating sources are
> given the greatest weight, followed, in order, by
> opinions from nontreating sources and opinions from
> nonexamining sources.  [20 C.F.R.] §§ 404.1527(d)(1)
> and (2).

Evans v. Barnhart, No. CIV. 02-459-M, 2003 WL 22871698, at
*5 (D.N.H. Dec. 4, 2003).

In the ALJ's evaluation of Nickerson's depression, somatoform disorder and anxiety disorders under Section 12.06, Section B, he considered the medical opinions of three practitioners.  The ALJ assigned the most weight to the opinion of non-examining state agency psychologist, Dr. Jan Jacobsen. Admin. Rec. at 22.  Dr. Jacobsen reviewed Nickerson's medical records on February 15, 2013, and concluded that she had only moderate limitations in maintaining concentration, persistence and pace.  Dr. Jacobsen further opined that Nickerson retained the ability to understand and remember simple to moderately detailed tasks, and to sustain attention to perform tasks for extended two-hour periods throughout the day.  Admin. Tr. at 94.

The second opinion was that of Dr. William Swinburne, a consultative psychologist for the Social Security Administration.  Dr. Swinburne saw Nickerson for a psychological profile on January 3, 2013.  Admin. Rec. 369-374.  He diagnosed her with a major depressive disorder (recurrent, moderate), a pain disorder with both psychological factors and general medical condition, and a panic disorder without agoraphobia; he gave Nickerson a Global Assessment of Functioning ("GAF") score of 50.[2]  Id. at 372-73.  Dr. Swinburne opined that Nickerson

---

[2]     The "Global Assessment Functioning" scale is "used to report a clinician's judgment of an individual's overall level of psychological, social, and occupational functioning at the

"could be expected to understand and remember short and simple instructions and to be able to take supervision," and that she "can be expected to get along with coworkers in a socially appropriate manner." Id. at 372.  However, he opined, Nickerson "does not tolerate stress very well," and, "[i]n a work-like situation . . . can be expected to have difficulty providing reasonably good attendance." Id. at 372.  He stated that Nickerson was "easily distracted," needing "to be refocused frequently to the question asked," and opined that she would "need close supervision to stay focused on a task and to be moved from one task to another." Id.

Finally, the ALJ considered the opinion of Dr. William Dinan, with whom Nickerson met on February 4, 2013, in connection with her application for Aid to the Permanently and

_____

time of evaluation." King v. Colvin, 128 F. Supp. 3d 421, 439, n.16 (D. Mass. 2015) (citing Gagnon v. Astrue, No. 1:11-CV-10481-PBS, 2012 WL 1065837, at *5 (D. Mass. Mar. 27, 2012)). "[GAF] scores may be of help in assessing functional ability, although they are not determinative." Id. (internal quotation omitted).

"GAF scores range from 0-100.  A GAF score of 41-50 indicates '[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).'" Wyman v. Astrue, No. 11-CV-574-PB, 2013 WL 474549, at *1 n.2 (D.N.H. Feb. 7, 2013)(quoting Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32 (rev. 4th ed. 2000)).

Totally Disabled ("APTD"), a state disability program.
Regarding Nickerson's concentration, Dr. Dinan described
Nickerson as: "erratic, easily distracted, forgetful, pace
slow."  Admin. Rec. at 256.  He diagnosed Nickerson with major
depression (mild) and anxiety, and assigned her a GAF score of
65.[3]  Relying on Dr. Dinan's report, Dr. Peter Delfausse
completed an assessment for ATDP in May, 2013, and opined that
Nickerson had marked limitations in concentration and
persistence.  Admin. Rec. at 251-52.

The ALJ found that Dr. Swinburne's opinions concerning
Nickerson's limitations in maintaining concentration and
persistence were not supported by the record.  In support of
that conclusion, the ALJ stated that Dr. Swinburne "could only
[so] conclude based" on Nickerson's self-reporting.  Admin. Rec.
at 23.  He further relied upon the fact that Dr. Douglas Moran,
Nickerson's orthopedic specialist, did not mention Nickerson's
mental health limitations in his treatment notes; and that
Nickerson had "reported a four-month gap [in treatment] to Dr.

---

[3]     A GAF score between 61 and 70 suggests "that one has some
mild symptoms or some difficulty in social, occupational or
school functioning, but generally functions pretty well and has
some meaningful relationships." Stanley v. Colvin, No.
CIV.A.11-10027-DJC, 2014 WL 1281451, at *5 (D. Mass. Mar. 28,
2014) (citing Am. Psychiatric Ass'n, Diagnostic and Statistical
Manual of Mental Disorders 32 (rev. 4th ed. 2000)).

Moran as being busy and moving." Id.  The ALJ also relied upon
Nickerson's self-report around that time period that "counseling
was going well and helping her."  Admin. Rec. at 23.

Regarding Dr. Dinan's and Dr. Delfausse's opinions, the ALJ
noted that Dr. Dinan had assessed a GAF of 65, "indicative of
mild symptomology and no severe impairment" (admin. rec. at 23),
which, he stated, was inconsistent with a finding of marked
impairment.  On this basis, he declined to weight their opinions
concerning Nickerson's marked limitations in concentration and
persistence.

Nickerson takes issue with the ALJ's treatment of Dr.
Swinburne's opinions.  First, Nickerson contends that the ALJ
erred in stating that Dr. Swinburne's conclusions were based
entirely on Nickerson's subjective reports.  Review of the
record makes clear that Nickerson is correct: Dr. Swinburne
examined Nickerson, and his opinions are substantially based on
his own observations.  The Commissioner does not meaningfully
dispute the point.  See Mem. in Support of Mot. to Affirm at 4
("the ALJ was not entirely accurate when he stated that Dr.
Swinburne 'could only conclude [that Plaintiff was as limited as
he found] based on [Plaintiff's] self report,' because Dr.

Swinburne examined Plaintiff and based his opinion on some of his observations.").

Second, Nickerson argues, the ALJ erroneously relied upon a purported "four month gap" in treatment when she was "busy and moving" in support of his determination.  The ALJ's "four month gap" observation was derived from evidence that pertains not to Nickerson, but rather to a different patient; as discussed above, that evidence was later removed from the administrative record.  So, it cannot reasonably be disputed that the ALJ's reliance upon that record evidence was in error, and, it is difficult to calculate what effect it had on the ALJ's decision.

Nickerson further finds flaw with the ALJ's reliance upon Dr. Moran's treatment notes in support of his determination that Dr. Swinburne's opinions were not supported by the record.  She argues that Dr. Moran is an orthopedist who was focused on repairing her knee; it therefore makes little sense for the ALJ to rely on a lack of comment by Dr. Moran on her mental functioning.  That argument has some appeal, especially since the ALJ cites to no evidence in the record suggesting that Dr. Moran had either the opportunity to (or an interest in) evaluate Nickerson's mental functioning, or that Nickerson ever raised her mental health limitations and concerns with Dr. Moran.

Finally, Nickerson argues, the ALJ was wrong: Dr.
Swinburne's opinion is, in fact, supported by the record.  She
points to Dr. Delfausse's assessment, which found that Nickerson
had marked limitations in concentration and persistence.[4]  As the
Commissioner concedes, Dr. Delfausse's opinion arguably does
support Dr. Swinburne's assessment.  But, as the Commissioner
correctly points out, the ALJ is entitled to weigh the evidence
and resolve conflicts between medical opinions.  See Irlanda
Ortiz, 955 F.2d 765, 769 ("the resolution of conflicts in the
evidence is for the Secretary, not the courts.").  That said,
the reasons given by the ALJ for assigning little weight to Dr.
Swinburne's opinions are mostly invalid or not supported by the
record.

Nevertheless, the ALJ's decision can "still pass muster if
the other reasons given to accord medical reports little weight
are adequately supported."  Arroyo v. Barnhart, 295 F. Supp. 2d
214, 221 (D. Mass. 2003).  The Commissioner argues that should
be the case here, because, in addition to the above, the ALJ

---

[4]     Nickerson objects to the fact that the ALJ discussed Dr.
Dinan's GAF score of 65, but did not discuss Dr. Swinburne's GAF
score of 50.  However, the record makes clear that the ALJ was
not considering Dr. Dinan's GAF score for purposes of
determining whether Nickerson was severely disabled.  Instead,
he was considering of the GAF score in the context of evaluating
the consistency of Dr. Delfausse's and Dr. Dinan's medical
opinions.

also considered Nickerson's statement that counseling was going well, and helping her.

Assuming that statement alone is sufficient to constitute substantial evidence that would justify discounting the weight assigned to Dr. Swinburne's opinion, the ALJ did not sufficiently explain why that statement would undermine Dr. Swinburne's opinions concerning Nickerson's limitations with respect to concentration and persistence.  Further complicating matters is that the record evidence the ALJ erroneously cites in support is a medical record from a primary care visit for ear pain.  See Admin Rec. at 23 (citing "Exhibit 8F/13" or Admin. Rec. at 399).  That document contains no discussion of Nickerson's mental health or counseling.  And, as Nickerson points out, some of those medical records that do reflect her reports that counseling was going well are internally inconsistent.  See, e.g., Admin. Rec. at 394 (medical record from Nickerson's primary care provider, noting Nickerson's report that counseling is "going well," but counselor recommended Nickerson see a psychiatrist "as she does not think the Celexa is doing anything for her . . . Taking Klonopin three times a day.  Doesn't think this is enough, at times takes a fourth.").  Accordingly, and "[i]n the absence of a more developed analysis on the part of the ALJ, the court cannot

accept for purposes here the alternative justification offered
for assigning little weight" to Dr. Swinburne's opinion.
<u>Arroyo</u>, 295 F. Supp. 2d at 222.

In light of the above, the court must conclude the ALJ's
decision to afford Dr. Swinburne's opinion little probative
weight is not supported by substantial evidence.  <u>See</u> <u>Haggblad</u>
<u>v. Astrue</u>, No. 11-CV-028-JL, 2011 WL 6056889, at *13 (D.N.H.
Nov. 17, 2011), <u>report and recommendation adopted sub nom</u>.
<u>Haggblad v. U.S. Soc. Sec. Admin., Com'r</u>, No. 11-CV-28-JL, 2011
WL 6057750 (D.N.H. Dec. 6, 2011) ("None of the reasons the ALJ
gave for according little weight to Dr. Deberghes' opinions is
supportable.  Because the ALJ failed to provide a supportable
reason for discounting Dr. Deberghes' opinions, the RFC that
resulted from his decision to give more weight to Dr. Fairley's
opinions than Dr. Deberghes' opinions is not supported by
substantial evidence.")  "Because, in turn, the weight
determination is crucial to establishing whether or not
Plaintiff is disabled, a remand is proper on this ground alone."
<u>Arroyo</u>, 295 F. Supp. 2d at 222 (collecting cases).  The court
having determined that Nickerson is entitled to a remand, she is
free to raise her additional arguments to the ALJ for
reconsideration on remand.

## Conclusion

For the foregoing reasons, as well as those set forth in the claimant's legal memorandum, claimant's motion to reverse the decision of the Commissioner (document no. 8) is granted, and the Acting Commissioner's motion to affirm her decision (document no. 11) is denied.  The Clerk of the Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

January 6, 2017

cc:  Raymond J. Kelly, Esq.
     Michael T. McCormack, AUSA